May it please the court. In this case, I'm representing Colt Malone. It's well established that a traffic stop must be carefully tailored to its underlying justification. In Rodriguez, the Supreme Court provided a bright line to this standard in that an officer cannot add time to a stop by engaging in a detour unless there is reasonable suspicion. In this case, Detective Brewer violated this rule. As the court found, Detective Brewer did not have reasonable suspicion, but nevertheless, after he conducted the background checks, he decided to shift his focus away from anything related to the mission of the stop and instead began investigating what has said that what law enforcement may not do is divert from the mission of the stop, nor may an officer engage in safety precautions taken in order to facilitate such a detour. What if the what if the detective goes on a detour to conduct an investigation, but because there's a separate driver and a passenger that the detective is investigating the passenger but is not prolonging the stop because the driver is still looking for registration and proof of insurance. In other words, there's a detour, but the but under Rodriguez, the stop itself is not prolonged. That's correct. Rodriguez expressly recognized that you can engage in this unrelated conduct so long as it doesn't add time to the stop, but that's not the case here. Well, that's what the district court specifically found on page 146 that asking Malone out of the car did not prolong the stop. That was the factual finding, correct? No, the finding was based on the legal assumption that the erroneous legal assumption that asking Mr. Malone out of the car did not prolong the stop because the officers had the right to ask Miss Tucker for her registration and insurance documentation. The key problem with that is it doesn't matter where they still had the right to ask her for that. It was whether or not they were still engaged in any conduct that could be attributed to the mission of the stop. And as they admitted, they weren't. Well, but she was continuing to look for the judge. You're on you, by the way. Judge Bell, you're on you. Thank you. I think Judge Bell has a question. No, I was I was just starting to ask the question. I'm sure you were starting to ask, too. It was on your thread of questioning. So you proceed because I'm sure you're going to ask exactly what I was going to proceed. Okay. Okay. Thank you, Judge. As I understand it on page 146, what what the detective was or what the judge was saying is the driver is still looking for the registration and proof of insurance. And so both things were happening contemporaneously. The detective was investigating Malone. Certainly. No question about it. But that she was still looking for those papers. And so basically, no harm, but there was no clearly erroneous finding that asking Malone out of the car and conducting this contemporaneous independent investigation of Malone didn't prolong the stop of Tucker because she was continuing to look for the papers. And that was integral to the traffic stop. A couple of points to that first on volume one at three away when the court makes its specific holding, he says that it was not prolonged because the officers had every right to at least ask her for her license or for her registration and insurance. There's no evidence here that she was still looking for those. And they never gave her an opportunity to provide to the beginning. Part of that question contains that assumption. I mean, your argument would be good if the court hadn't started by saying factually and declaratively there was no prolonging of this stop. I'm not sure I fully understand. I mean, the second the only reason the court reaches that is by saying that there was no prolonging because the officers had the right to ask her for these documents. I mean, it would be the same as saying there's no prolonging because the officer had the to issue a ticket. But Cole, the case providing the 28 J is clear that you can't delay engaging in things that would advance the mission of this stop in order to engage in a detour. And that's expressly what the officers in this case said they were doing. Well, this this really is a key point for me, too. And what Judge Brimmer says is as far as we can tell, she was either still looking for them, the papers, or at least she could have been asked if she had any luck in finding those. But your point is they needed to be asking her if if she had found them. They just can't simply ignore her and then do anything they want while she's sitting there with the papers on her lap, possibly. Well, I think it does go into the analysis of whether or not they're engaged in divergent. And we wouldn't have a case if they had gone back and asked her if she had found those documents and she said, no, I'm still looking. And then they went and detoured to investigate Colt Malone. And we probably wouldn't have a case if even after they had investigated Mr. Malone, they had gone back and asked her for those documents. But what's clear is that after Detective Brewer leaves the car after the background check, he's not interested in these documents at all. He never goes back and asks her for them. He can't remember if he ever even got them. He never issues her a warning or a ticket. I mean, the stop was essentially over. They never did anything else related to the stop after he does the background check and it clears on Ms. Tucker and Mr. Malone. And so everything after that is time that can't be attributed to anything that would advance the mission of the stop. And I just, I want to analogize or make an analogy of, you know, an officer can't just refuse to complete a stop or can't just, you know, refuse to ask Ms. Tucker for her license or registration. I've muted my phone, but it's apparently does show up on here. I'm going to take my phone and put it in the other room, even though it's not ringing. Go ahead. Oh, no, no, no. Karen, stop the clock for Mr. Smith. No rush. All right. I'm back. Okay. Okay. Resume the clock. You can proceed. Sorry. Just to back up into the question of whether or not this was a detour. I think the answer is pretty clear in Detective Brewer's own statement that at this point in time, or after he ran the background checks, he wasn't interested in anything that had to do with the traffic stop. He was interested in investigating Mr. Malone. And so the question does become then, can you attribute this time while he's investigating Mr. Malone to anything related to the mission of the traffic stop? And you can't. It's important to note that the government has the burden of proving that this stop is carefully tailored to its initial justification. And there's no evidence that there's anything going on related to the stop at the time that the officers are investigating Mr. Malone. There is no testimony that they had asked her for her registration or insurance. The testimony is to the contrary that Ms. Tucker says they never asked her for that. Mr. Smith, let me probe this a little bit further because as we're talking about, I think it is so significant. On page 146, the judge says, so because the officers had every right to at least ask her if she had found these documents and determine whether or not she actually had them, the traffic stop was not over. Now you alluded to the fact that there is no testimony. And I think that, and I agree with you, at that point afterward of whether she was continuing to look for them or if she just got bored while they're questioning Malone and she stopped or if the officers ever asked her, you're right, the record is silent on all of those things. But my question is, if we're applying the clearly erroneous standard to this factual finding on page 146, because of the nature of the clearly erroneous standard, how can we say it was clearly erroneous? Because we have to view the evidence of the light most favorable to the she was still looking for the registration and proof of insurance. The silence of the record seems to have to cut against you because of the need to view the evidence favorably to the government. What's your response? Two responses. The first is, I don't know if that's a fair reading of what the court is saying in there. And especially it's not the reading that the government adopted in their response brief. They're essentially saying that the very last clause is the important piece that the traffic stop was not over. So essentially you can't add time to a stop as long as it's still ongoing. And Rodriguez directly rejects that proposition. It doesn't matter at what point, whether it's beginning, the middle or the end, where the additional time comes from. So I think what the, all the court is saying that is, is that the officers still had every right to ask her for this. So the stop's still ongoing. And if a stop's still ongoing, you can't add time to it. And that's just a legally erroneous standard. You can still add time to an ongoing stop. And second, if it does get into the clear air standard, if your interpretation of that statement is correct, there has to be some foundation in the record for that finding, or it will be clearly erroneous. And as you stated, there is no foundation in the record for finding that the officers were just waiting for her to find these documentations, or these documents, and that's why they went over to speak with Mr. Malone. In fact, the evidence is completely to the contrary of that. They had totally abandoned anything that had to do with Ms. Tucker's wide left-hand turn after they got the background checks. All they were interested in was diverting from the mission of the stop and investigating Mr. Malone. So I'm sure I understand what your position is. Are you saying that Mr. Malone prevails because the government didn't establish that she didn't have the documents ready in her hand, or was ready to tell the officers, I can't find them, and so write me a ticket for not having proof of insurance or whatever? Well, I think if the government had demonstrated either of those things, we couldn't prove that there was additional time added to this stop. I think on the record here, the fact that everything points to the officers completely diverting from the mission of the stop, and there's no way you can attribute this time to anything related to the of the stop. I'm still not real sure what the mission of the stop was. You have one set of law enforcement contacting another. This car has left this motel where problems are, but if there's more to it than that, I don't know. But diverting from the purpose of the stop, taking the passenger out of the car, you can see that that would be okay based on what the officers knew, so long as they're not prolonging the stop. No, I would push back on that. Rodriguez says you can't take a safety precaution in order to facilitate an investigation. So if they were taking him out to facilitate the investigation of Ms. Tucker for her left-hand turn, or if they had officer safety concerns related to that, it would be permissive. Even if she were saying out the window, give me just a couple more minutes. I know it's somewhere here in the back seat where there's all this clutter. I'm going to find it. Give me five minutes and I'll find it, and they take him out of the car. Do you think that they could take him out of the car for officer safety at that point? Well, they could take him out to conduct an unrelated criminal investigation at that point. I mean, it would be a detour, but it wouldn't be an impermissible detour because you can still for her document. Can they take him out unless they have some reasonable suspicion he's armed and dangerous? No, I think Wilson is clear that they can take him out for officer safety reasons related to the mission of the stop. So it's really the rare case like this one, where an officer testifies the only reason we're taking him out is because we want to investigate him, that it turns into a detour. Otherwise, the run-of-the-mill case is going to be governed by Wilson and that you can ask a passenger out of the car for officer safety purposes related to executing the mission of the stop. I'd like to reserve the remainder of my time for everybody. Okay, thank you. Mr. Chung? May it please the court, my name is Cyrus Chung, arguing on behalf of the United States. To begin where the appellant left off, the defendant's best and really his only argument here has to do with the fact that Detective Brewer below testified that he had other general criminal investigative purposes in mind during the stop. But Wren, against the United States, made very clear that subjective intentions play no role in ordinary probable cause Fourth Amendment analysis. The problem with the defendant's argument is that it's basis rests almost entirely, as far as I can tell, on that testimony that was elicited in the district court. But even though Wren said what you say, Rodriguez comes along later and it seems to me they create an exception for this situation of detours and they said on some investigations, not all, but in investigation into other crimes, there may be a detour from that mission of a traffic stop. So, do safety precautions may be taken in order to facilitate the detour? In order to facilitate, doesn't that imply an intent? Yeah, or do you eliminate, would you limit that statement to simply the authority to take safety precautions, not to delay the traffic stop? Yeah, I think the way, at least in the cases I've cited to the court, Lash and Hernandez from the Sixth Circuit and the Burwell case from the 11th, the way that they measure whether something is taken in order to prolong the stop is not by subjective intentions. Those cases explicitly had officers testifying that their subjective intention was something other than traffic, but each of those courts found that it was objective facts that drive the analysis and foreshadows this particular issue coming up. It says that the reasonableness of a seizure depends on what the police, in fact, do. So, it is measuring those actions and whether those can reasonably be attributed to the stop. That is what's driving the analysis of whether those actions are being taken in order to facilitate another general criminal investigation. So, based on that, what objective facts took place with regard to the inquiry of Mr. Ballone that pertain to the remaining issue for the traffic stop, which is whether or not Ms. Tucker had her registration and proof of insurance? Did they ask Mr. Ballone, do you know if she has registration and proof of insurance? Did any of the questions objectively pertain to the mission of the traffic stop? The questions as to... So, I think there's testimony in the record that Detective Brewer initially asked Ms. Tucker for her proof of insurance. There's testimony at volume four, page 67, that before going back and continuing the background checks, he tells Ms. Tucker, keep looking for it. I think I saved the question badly. I'm talking about when they asked Mr. Ballone out of the car. Obviously, they asked Ms. Tucker about the registration and proof of insurance, but your answer to Judge Bell is, well, you don't look at intent, you look at objective facts. So, my question is, well, when they pulled Mr. Ballone out of the car and questioned him, did they ask him anything with regard to the mission of the traffic stop? Did any of the questions, did the objective facts with regard to Mr. Ballone pertain to the mission of the traffic stop? Your Honor, the way that I would respond to that is that Maryland against Wilson makes that the ability to order the passenger out of a vehicle, on a vehicle stop, one that is routine. It requires no justification other than the fact that it is a traffic stop and that there is a passenger in there. But, on top of that, the district court here found that, to the extent the base was needed, they made it, the district court made a factual finding that there were safety concerns with respect to Mr. Ballone. There was the discussion of him being on parole and just having- I'm not insinuating that there was anything improper at all about asking him out of the vehicle, about whether or not this was a detour from the mission of the traffic stop. So, I just want to just be clear, I am not suggesting that there was a constitutional violation in asking him out of the vehicle. I'm just trying to get a handle on this distinction that you're drawing between objective and subjective intent. So, I'm assuming, you know, that you're right. So, what did they do with, objectively, with regard to Mr. Ballone that suggests that they were continuing to investigate something pertaining to the remaining issue in the traffic stop? And the only remaining issue is, did you have a registration of insurance? The sequence of events in this case, Your Honor, is that the exit order happens, the defendant, Mr. Ballone, gets out of the vehicle, and then, very shortly after he gets out of the vehicle, the gun is spotted under his seat for where he was sitting before. So, that there isn't a long sequence of events where they take Mr. Ballone out of the car and then continue to ask him questions, either about the traffic stop or about anything else, for that matter. At that point, there's really nothing to suggest that they were, objectively, apart from the testimony of what was inside Detective Brewer's mind. Other than that, there's nothing objectively to suggest that the exit order itself was a detour. In cases where they find that things are a detour, the cases that the appellant has cited to the court, in Cole, for example, or in Cortez, where there's suggestions in dicta, there's a suggestion that what they're doing, the purported safety measure or actions that they are taking with respect to the stop, there are objective facts that contradict that being able to be characterized as a safety measure. For example, in Cortez, it's the actions of the sergeant who is standing by this person who is already questioned for seven minutes. In Cole, it's the invasive, repetitive nature of the questions that he's asking, that it's over and over, covering the same topics. At that point, it doesn't look like a safety measure. It's the sort of routine safety measures that the court approved in Pennsylvania against Mims and Maryland against Wilson. Because there are objective facts, apart from the officer's subjective motivations as to why they're asking that, but other objective facts that would show that what they're doing cannot be characterized as safety anymore, cannot be characterized as routine. That's the point at which they find that those measures are things that would be extending the stop. What about this colloquy? How do you reconcile that argument with this colloquy on page 66 of the transcript that your opposing counsel points to? You were planning at some point to issue a ticket for a warning for the traffic violation to the driver, correct? Answer, correct. Question, but you did not immediately do that at that point, correct? Answer, no, I had further investigating to do. So how do you reconcile the officer's admission that he did not issue a ticket to Ms. Tucker because he was wanting to continue further investigating? It happens coincidentally to asking one of the two, it's not Ms. Tucker, the driver, it's asking the passenger out of the vehicle. How do you reconcile that with your characterization that this was an innocent continuation of a traffic stop? I reconcile it by Wren, again, indicating that subjective motivations do not matter. Taking it back to the original context of Wren, when you make the initial traffic stop in the drug investigation, for a murder investigation, for any other investigation, but none of these things matter in terms of the stop itself. And I contend that Wren and the way it's interpreted in Lash, Hernandez, and Burwell, that subjective motivation simply doesn't enter into the Fourth Amendment analysis. Even if they admit it, so hypothetically, let's say the answer had been, no, I never intended to give her a ticket at that point. I intended to do a separate criminal investigation of Mr. Malone. Do you still think that we should affirm it, if that were the answer? I think on these facts, as they are established in the District Court, the answer would be yes. I think the answer is yes. And in fact, that is the testimony that elicited in Lash and in Hernandez and in Burwell. They all elicited admissions from the officer that when they took the particular safety precaution or were making particular inquiries, that they had other purposes in mind. And that admission simply doesn't enter into the analysis, unless it is established by other objective facts, things that would point to the particular safety measure or the particular action incidental to the traffic stop, not being able to be reasonably characterized as something that is incidental to a traffic stop. It might undermine the safety concern though, right? Here we have the hotel, which I assume the concern was drugs, assume that. And so they want the guy out of the car so they can pat him down and see if he's got any drugs on him. And they say, well, it was for safety. And if you have all of this evidence about the hotel and that, nobody says that they couldn't stop the car for a wide turn because of ran. It's pretextual, but they can do it. But that doesn't give them necessarily a gold certificate to pull people out of car on safety grounds when it wasn't safety. Same to me. And not to say that that's 100% in the suit. Here's my problem. And I just want you to have a chance to address this. My problem with the government's position in this case is you have known facts, which is the real reason for the stop is the hotel, valid stop. And officer goes up, I need your license. I need your registration. I need proof of insurance. Hands the license, says I'm at all. And the officer goes back to car. She's going to look inside the glove box. She's going to see where do I have those things? She may not even be insured and she knows it, but the officers never go back to her and say, did you find those? Instead, your view, it seems to me just allows the officers to do anything they want for the rest of the stop and investigate the hotel, pull people out of cars, look from outside. Do I see anything under the seat for as long as they want without ever going back to her and saying, did you find the proof of insurance and the registration? So you have this unlimited stop that never stops until they are satisfied to themselves that they can't investigate and prove another crime. That can't be the law that they're allowed to do that. Is that your position? It is not your honor. And where do I miss the boat? Because that's exactly what happened in this case, the exit order happens right when he comes back from the background check. So the exit order, he makes the, uh, asks for the background check, comes back, performs the exit order, and then the gun is visible very, very shortly thereafter. Yeah, I concede that that's how it worked out in this case, but he you're saying the officer doesn't have to go back to the driver and say, did you find that out? Because the officer didn't do that here. You didn't do that. But what that would to do to require that here would be to require maximum efficiency. The driver testified here, there was no testimony that the driver was attempting to give the registration that she had found the proof of insurance that she had found the proof of insurance. And I'm not contending that the stop can go on forever. So the burden is on her to show that she had that isn't, doesn't the government have to prove its case here. And the way that it would do that is by showing that it did things the way they're supposed to be done, went back to the car and found out. We still don't know if she had proof of insurance and registration to this day. I don't know whether she had that. And the reason I don't know is because the government didn't, the officers didn't go back to the car. At the point at which they found the gun, it became a different investigation. And I think at that point, even the defendant would concede that there's probable cause at this point to arrest Mr. Malone. I think it's 100%, but that doesn't get to anything I'm talking about. And I think what the language from Rodriguez that answers your honor's question is that authority for the seizure in Rodriguez ends when tasks tied to the trafficking fraction are or reasonably should have been completed. So in your honor's hypothetical, if this keeps going on for minutes and minutes and minutes, and they still haven't asked her about her insurance, they've issued an exit order. They continue in dialogue with Mr. Malone. They run a drug dog around the car. They also pat down Mr. Malone. They do all of those steps. At this point, what they're doing can no longer be characterized as having authority under the seizure because at this point, it reasonably should have been completed. But the timeframe here where he's going back and asking the exit order issues right when he comes back from the background check and guns found immediately thereafter, in that factual scenario, I don't think it comes under Rodriguez where it says these tasks reasonably should have been completed. Had there been more things, more investigative actions that have been taken by the officers, more than simply an exit order, then I think it might be a different situation. That would fall under Rodriguez's proclamation there. But that's simply not the factual scenario here. And so for that reason, I don't think that the simple exit order on its own makes this a situation where authority for the seizure should have been. I see that I am out of time, unless the court has any other questions. We'll stop the clock. Judge Phillips, do you have any additional questions? I don't. Thank you. Judge Rebell, do you? No. Okay. Thank you, Mr. John. We'll hear from the appellant. You have 46 seconds. I would obviously push back on any assertion that Rodriguez doesn't allow a court to look at the subjective purpose of an officer. But even if the court did look at the objective facts to determine whether this was a detour, I think it's important to remember that the officers had stood by the car this entire time. They showed no concern about Mr. Malone. And the only thing that changes after the background search is that they learned that he has the gang name of Hurricane. Subjectively, there's been no increase in any officer safety concern at that point. And it does strongly imply that even if you apply an objective test, that they are detouring from the mission to stop. For that reason, I would respectfully request that this court remand to the district court. Okay. Thank you, Mr. Smith and Mr. Chung. Very well presented in your briefs and today. Thank you for your submissions. It will be taken under consideration and taken under submission.